I am still Cheryl Gordon-McLeod. Today I am here on behalf of Clayton Roueche. The question in this case involves Rule 32-I-3, which requires district court fact-finding at the sentencing whenever there is a disputed factual matter. And under this circuit's precedent, and I'm speaking here of, for example, Herrera-Rojas, strict compliance with Rule 32-I is required. So the first question is, was there a real factual dispute at sentencing, or is it just generalities that I'm talking about, as the government's brief says? Well, if we go through the government's sentencing memo, the sentencing transcript, and the probation pre-sentence report, I think we see actual factual disputes. The government's sentencing memo said that Mr. Roueche headed a violent group that used guns, threats, and violence, and it submitted two sealed declarations in support of that. The first one, the LeClerc Declaration, and this is in the sealed ER beginning at 351, attributed to Mr. Roueche threats, personal threats to Mr. LeClerc, Mr. Roueche's personal orders at different times that Mr. LeClerc might be killed, the fact that Roueche was supposedly carrying a gun during these threats, quote, Clay sent me a death threat, et cetera. Was there a dispute about this? Well, if we look at the sentencing transcript, ER 27, we see the defense saying he didn't even know LeClerc. If we look at what was submitted in advance of sentencing, we see two opposing declarations submitted by the defense, one from the defense investigator and one from somebody else disputing the specific facts in the LeClerc Declaration. And if we look at the record, we see that there was an actual motion to strike submitted to strike this declaration. Same thing with the Davis Declaration, allegations of violence, and then in contrast, the defendant denied ever having committed, denied the Davis allegations of violence. Same thing with the sentencing transcript. Government counsel argued, quote, his life is violent and he is involved in the violence personally, close quotes. Defense counsel got up and said, defendant denies that he's threatened or harmed any other person and denies the reputation of the gang for that. If it's not clear from what I'm saying, I would call your attention to ER 324, the declaration of Todd Maybrown, trial counsel, regarding disputed factual claims. It's not my characterization. That's his title of it. And he disputes the factual claims in the government sentencing memorandum. He appends his letter to the probation office. What does that letter to the probation office have at ER 334? Objections to various paragraphs, and it's the paragraphs concerning allegations of violence and allegations of Ms. Rusch's involvement with the drugs, two of the drugs that were in charge, ecstasy and methamphetamine. And if we look at the next document in there, ER 339, it's entitled Defendant Rusch's Memorandum Regarding Factual Disputes. Not my characterization, the actual title. So I think it's pretty clear that there's factual disputes, that they're over pretty key issues like defendant's personal use of violence and personal involvement in two uncharged drugs, ecstasy and methamphetamine, and there are no findings on the record. And there is no statement by the district court judge that he would not rely on the disputed facts. Under Carter, under Herrera-Rojas, the remedy is to remand to the district court. This is structural error, right? There's no harmless error factor, right? Yes. I've never seen the cases in this circuit call it structural error, but they do not do a harmlessness inquiry. The phrase that I've seen used is strict compliance, and I take that out of Carter and Herrera-Rojas, but I think the result is the same. No analysis of whether it would have mattered to the judge's determination. Well, mostly because we wouldn't know. We wouldn't know if it mattered or not, because the issue was not resolved. Exactly. There's a couple of clues, though, since the nature of the disputed facts were pretty bad, violence and threats to kill. We could take a clue from that. Your Honors, I'd be happy to reserve the bulk of my time. Very good. Thank you for your interest. Good morning, Your Honors. Helen Bruner on behalf of the United States. And perhaps I should start precisely where counsel started, but I would actually think that it would be helpful to start with what counsel actually said, defense counsel actually said, at sentencing, and then looking at the sentencing memorandum before I get to what things were really under dispute and whether or not there was a dispute. Ms. Bruner, does the government agree that if there were clashing versions of material facts that you've got, we've got to send it back under Carter and Garfield? Your Honor, if there were clashing disputed facts that the court relied on that materially affected the sentence, the temporal part of the sentence, and those disputes remained unresolved, of course. But that is why I want to start with counsel's comments at sentencing, because I think they're instructive. And then I want to talk a bit about the disputed facts, because when you parse all of the language and what was left, there really wasn't much of anything that might be nominally called a dispute. First, at ER 30, counsel for Mr. Roosh says to the court at the time of sentencing, I'm not going to go into the factual disputes, because it seems to me that unless the court has particular factual disputes that the court wants to discuss, it seems to me that the court would likely say, and there's a bit of a typo, I think, in the record, they're not going to affect dramatically how this court imposes sentence. So I think that sets the tone for what comes next. But I would also point out that in the sentencing memoranda and various submittals, while certainly counsel for the defense had moved to strike Mr. LeClerc's declaration and certainly talks about disputes in the sentencing memorandum throughout, at ER, for example, 324, that was noted by counsel in argument, the defense says this court may need to resolve factual disputes. So it is really not so clear that there was a factual dispute. And in ER 325, the defense writes, the defense assumes most of the objections to the pre-sentence report won't impact sentence, but does raise paragraph 31 of the pre-sentence report. That's the paragraph that discusses the violent nature of the U.N. gang. Now, with that in mind, let me talk a bit about what disputes have been identified. First, the types of drugs trafficked. Well, there is mention in the pre-sentence report of ecstasy and methamphetamine, in addition to the massive quantities of marijuana and cocaine. But I think that to the extent that that played a role at all, it played very little. And in any event, the defense did not object to the wiretap information in which Mr. Bruce has actually heard talking about methamphetamine and precursors. But does it make any difference that the defense didn't object to the wiretap information? I think that ameliorates anything related to the dispute. But in any event, the guidelines calculations were with respect to the marijuana and cocaine. That's clear. I mean, does plain error analysis inform our understanding of Rule 32? Well, I think plain error should in this case, particularly given where we were at sentencing in the comments of counsel. And when one looks at the quantity of marijuana and cocaine involved in this case, and I will get to the court's comments in a minute, those were overwhelming. So for passing mention of ecstasy, passing mention of methamphetamine, the fact that the district court, in fact, said that it understood, and I will, if the court will bear with me, I can get the court's comment on the page, but it understood that obviously not every shred of drugs and money that were involved, that these people were involved in, that the co-conspirators were involved in, necessarily involved Mr. Roosh, that they may have other individuals that they're dealing with as well. You mean that comment, I'm sorry, you mean that comment by the judge where he says something like there's a tendency to load up on people or something like that? Exactly, Your Honor. Even when he said that he didn't say what he wasn't going to believe, what he did believe, did he? He did not. And I would, it would be untruthful of me to say that I wish that he had perhaps added another sentence or two to his remarks, because then I wouldn't be here making this argument. But I do think when you look at what the disputes are that are involved, I mean, with respect to. . . So you're, it sounds to me like what your argument is that notwithstanding Garfield and Carter and so on, that basically this is really not a hard and fast rule, even though the judge didn't do what government would have liked him to do in explaining how he resolved the differences of fact, that it really doesn't matter as long as there's kind of a no harm, no foul concept here. Is that correct? Well, I think this Court's cases have said that it has to have a temporal, an impact on the temporal sentence. I think that it's also clear that. . . But in the problem, we don't know what impact it had because he didn't explain it. Well, I do think what you have is explanation from the Court on a number of points, because what the Court does say with respect during sentencing, as has already been noted, he does say, well, I'm not striking the declarations of LeClerc and Davis. But, of course, the Court understands that some of the information is extremely self-serving on the part of the declarants and that he's going to take them with a grain of salt. Can you point out, counsel, what the exception is in Garfield about what happens, what we're supposed to do if the judge fails to make the findings of fact required under Rule 32-I-3? Or under Carter, if the judge chooses not to rely on the disputed facts, that he doesn't say that he's not going to rely on those facts? I don't find an exception, but I'd surely be interested to have you point it out to me. Your Honor, the government's argument here is, obviously, no, there's not an exception to Carter and Garfield if you find that, absolutely, there was a disputed fact that needed to be resolved here. But I would point out that defense counsel at sentencing themselves didn't see the need to have the Court resolve it. Well, that's the plain error issue, right? That's the plain error issue. But ultimately, are you saying that what we are left with is to determine the materiality of the dispute? The question is, how material was it? And I gather the government is, by implication, saying that in light of Carter and Garfield, that if we find that what the dispute was was really not all that important, that we can just ignore Carter and Garfield and just leave it as is. I think if you find that really the dispute, after you parse all of the pieces of it, is one that really would not have affected the temporal limitations of the sentence, I don't think you need to send it back. And I think you can look to what the district court said here. Perhaps not as artfully as an appellate lawyer would like, but that's, you know, it's the role of the appellate lawyer to look at things with hindsight. But what the court did say is that it was going to rely only on those things that Mr. Roosh did, what he pleaded guilty to, and what was said in the wiretaps. And I think that definitely is a limitation on what the court considered. Is that enough to satisfy Carter? I think so, Your Honor, particularly in light of the facts here. When you parse all of this, and if I can, if the court will indulge me and allow me to go back a minute to the disputes themselves, with respect to the LeClerc Declaration, really the disputes fall into two areas. One, the amount of drugs. Well, I would point out to the court that what is interesting is that the defense never objected to paragraphs 57 through 59 in the pre-sentence report. Those relate to Mr. LeClerc and the amount of drugs that he brought in. What about the fact that the defendant contested he ever met LeClerc and didn't supervise him? Well, whether or not he never met Mr. LeClerc, he has not objected to the fact that the amount of drugs brought in by Mr. LeClerc were relevant to his sentencing. He didn't object to those paragraphs. What those paragraphs say is that Mr. LeClerc brought in some 12 loads. It talks a bit about quantity, and the quantity, even if you went to the lowest quantity that's mentioned in those paragraphs for each of the 12 loads, would take you to three tons of cocaine brought in. So if we want to talk about whether or not LeClerc was going beyond with respect to the amount of drugs, I think that lack of objection there takes care of that. And if you're talking about threats, let me go back again to counsel's argument at sentencing. Counsel acknowledged that Mr. Roosh had firearms in his home, did not dispute, although the characterization did not dispute the fact that during the search of the home immediately after his arrest there were handcuffs, pepper spray, balaclava helmet, extended magazine on the 9mm Glock. Sounds like the possessions of a normal resident of the District of Columbia. I think Judge Collins had a question. No, that's okay. I was going to say, well, I do. So you would rather have this get resolved later on on an ineffective assistance counsel claim rather than get it resolved now? Oh, Your Honor. That's what's coming next if we don't grant you relief. With due respect, Your Honor, I think that's coming regardless of whether or not it gets sent back. It could come with a better record. And, you know, I guess what I would say, Your Honor, is I would urge in that regard that the Court do consider the limits of the dispute here, that it is not plain error and that under this circumstance I doubt that I would feel fairly confident that in my arguments on the 2255, but I guess that will have to be noted.  Thank you, Your Honor. Rebuttal? Thank you, Your Honor. I guess I think the law is pretty clear. Let me make just two factual points. Government counsel argued about whether any of these objections involved the temporal length of the sentence. And I'd call your attention to ER pages 324 and 325, which are the first two pages of the Declaration of Todd Maybrown regarding disputed factual claims, where he says in paragraph 4, Declaration is submitted about the disputed factual claims. In presenting this information, I will attempt to focus upon issues that may bear upon the temporal component of the sentence. So I think it was raised in the context of the temporal component of the sentence. The other factual matter I wanted to bring to your attention in terms of whether the district court really considered it or didn't consider it or took it with a grain of salt, this was a district court judge who knew how to make perfectly clear when he was not going to consider something at sentencing. I included the whole preliminary stuff about the movement out of district by the BOP because of the safety concerns. And the district court judge held a closed hearing on that and talked to counsel about it and said, look, BOP can do it at once for safety. It's a very low threshold. I have a much higher threshold for sentencing, and I'm not going to consider any of that for sentencing. So don't worry about it. So he knew how to make it clear when he was not considering something for sentencing. He simply didn't do that at the sentencing hearing itself with regard to the disputed issues. Thank you. Thank you, counsel. The case is here to be submitted for decision.
judges: Collins, Thomas, Smith M.